1   COTSIRILOS, TIGHE, STREICKER
      POULOS & CAMPBELL, LTD.
2   MATTHEW S. RYAN (Pro Hac Vice Pending)
    33 N. Dearborn, Suite 600
3   Chicago, IL 60602
    mryan@cotsiriloslaw.com
4   Telephone: 312.263.0345
    Facsimile:  312.263.4670
5
6   BROWN WHITE & OSBORN LLP
    KENNETH P. WHITE, SBN 173993
7   333 South Hope Street, 40th Floor
    Los Angeles, California 90071-1406
    kwhite@brownwhitelaw.com
8   ktarbinian@brownwhitelaw.com
    Telephone:  213.613.0500
9   Facsimile:   213.613.0550

10  Attorneys for Defendant
    GREGORY STRICKLER
11

12              UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14

15  WEBULLIENT, INC., a California      Case No.: 2:17-7294 SJO (PJW)
    corporation,
16                                      Judge: Hon. S. James Otero
                  Plaintiff,
17
    v.
18                                      DEFENDANT'S ANSWER,
    GREGORY STRICKLER, an Individual,   COUNTERCLAIMS AND THIRD-
19                                      PARTY COMPLAINT
                  Defendant.
20  ─────────────────────────────────
    GREGORY STRICKLER, an Individual,
21
                  Counterclaimant,
22
    v.
23  WEBULLIENT, INC., a California      DEMAND FOR JURY TRIAL
    corporation,
24
                  Counter-Defendant.
25  ─────────────────────────────────
    GREGORY STRICKLER, an Individual.
26
                  Third-Party Plaintiff,
27
    v.
28
─────────────────────────────────────────────────
                                1
    ANSWER TO COMPLAINT, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT

BROWN WHITE & OSBORN
A T T O R N E Y S

CHAD, GROHMAN, an Individual, FIIK HOLDINGS, LLC, a Delaware limited liability company; TRANSPARENT MEDIA VENTURES, LLC, a Delaware limited liability company; and THE SEARCH AGENTS, LLC, a California limited liability company,

Third-Party Defendants.

## ANSWER

Defendant GREGORY STRICKLER ("Defendant"), by his undersigned counsel, hereby answers Plaintiff's Complaint as follows:

### STATEMENT OF THE ACTION

1.    Defendant denies the allegations in paragraph 1.

### THE PARTIES

2.    Defendant admits the allegations in paragraph 2.

3.    Defendant admits the allegations in paragraph 3.

### JURISDICTION AND VENUE

4.    Defendant admits that this Court has jurisdiction, but denies the remaining allegations in paragraph 4.

5.    Defendant admits that this Court has jurisdiction, but denies the remaining allegations in paragraph 5.

6.    Defendant admits that the U.S. District Court for the Central District of California is a proper venue, but denies the remaining allegations in paragraph 6.

### FACTUAL BACKGROUND

7.    Defendant admits that Webullient provides management and administrative services to a set of related and associated companies, but denies the remaining allegations in paragraph 7.

8.    Defendant admits the allegations in paragraph 8.

9.     Defendant lacks sufficient knowledge or information to form a belief regarding the veracity of the allegations in paragraph 9 and therefore denies them.

10.     Defendant admits that he had access to certain Webullient information while employed as Webullient's CTO, but denies that his access to all Webullient information was "unfettered."  Defendant denies the remaining allegations in paragraph 10.

11.     Defendant denies the characterization of his compensation and benefits as "generous" and his base salary as "substantial" and lacks sufficient knowledge or information to form a belief regarding whether Webullient provides services to TSA, and therefore denies that allegation.  Defendant admits the remaining allegations in paragraph 11.

12.     Defendant denies that he was involved in assisting in the acquisition of new clients, but admits the remaining allegations in paragraph 12.

13.     Defendant admits that he was initially granted a 4% ownership interest in FIIK and the consolidated companies and that he now owns a 25.1% equity interest in FIIK and the consolidated companies in addition to a 25.1% equity interest in TSA. Strickler denies the remaining allegations in paragraph 13.

## Webullient's Proprietary Information, Trade Secrets, and Code

14.     Defendant denies the allegations in the first sentence of paragraph 14. Defendant admits that his work was focused in other non-lead generation areas that were eliminated from the Company's portfolio.  Defendant admits the allegations in the third sentence of paragraph 14, but denies any remaining allegations in paragraph 14.

15.     Defendant admits that he developed a client side system for TSA to collect job listings from third party sites, but denies the remaining allegations in paragraph 15.

16.     The allegations in paragraph 16 call for a legal conclusion that each of the nine bulleted categories or types of information constitutes trade secrets and

therefore no answer is required or provided.  To the extent an answer is deemed required, the allegations of paragraph 16 are denied.  Answering further, Defendant lacks sufficient knowledge or information to form a belief regarding whether Webullient owns the following bulleted items: Software Systems, including the LMS, the RMS, and Client Specific Integrations; Client Information, Consumer Data, Data Gathering Techniques, and/or Employee Information.  Answering further, Defendant denies that Webullient developed or maintained the Job Content Collection Systems, which TSA developed and maintained.  Defendant denies any remaining allegations in paragraph 16.

17.     The allegations in the first sentence of paragraph 17 call for legal conclusions to which no answer is required or provided.  To the extent an answer is deemed required, the allegations in the first sentence of paragraph 17 are denied.  Answering further, Defendant denies that Webullient takes reasonable security precautions to maintain the secrecy and confidentiality of all of its business information.  In response to each subpart of paragraph 17, Defendant answers as follows:

- Defendant lacks sufficient knowledge or information to form a belief regarding whether Webullient required employees to sign confidentiality agreements as a condition of employment and therefore denies these allegations;

- Defendant lacks sufficient knowledge or information to form a belief regarding whether Webullient advised employees upon employment that the Company's client and other information are trade secrets and may be used only to benefit Webullient during employment and for no other purpose and therefore denies these allegations;

- Defendant denies that Plaintiff limited access to Company confidential and proprietary information to only those employees who need the information to perform their job functions for Webullient;

4

- Defendant admits that he used and required passwords to access Company proprietary and confidential information contained in its computer system, but denies the remaining allegations.
- Defendant admits that he used a secure computer system to store Company confidential and proprietary information, but denies the remaining allegations.
- Defendant admits the office had locks on its exterior doors, but denies the remaining allegations.

**Strickler's Misconduct, Pilfering, Sabotage, and Separation from Webullient.**

18.  Defendant denies the allegations in paragraph 18.

19.  Defendant denies the allegations in paragraph 19.

20.  Defendant denies the allegations in paragraph 20.

21.  Defendant admits that he took a scheduled leave of absence from the Company in May 2017 and that in May 2017 Defendant and Grohman discussed the amount of Defendant's equity interests in the Company.  Defendant lacks sufficient knowledge or information to form a belief regarding the truth of the remaining allegations in paragraph 21 and therefore denies them.

22.  Defendant denies the allegations in paragraph 22.

23.  Defendant admits that he returned from his leave of absence in June 2017.  Defendant denies the remaining allegations in paragraph 23.

24.  Defendant lacks sufficient knowledge or information to form a belief regarding the veracity of the allegations in paragraph 24 and therefore denies them.

25.  Defendant admits that he sent an email on June 11, 2017 to Chad Grohman entitled "Request for equal partnership."  Defendant denies Plaintiff's characterization of the email correspondence, states that the email speaks for itself, and denies the remaining allegations in paragraph 25.

26.  Defendant admits that he continued to discuss his financial arrangement and equity interests in the Company with Grohman.  Defendant denies Plaintiff's

characterization of those discussions and denies the remaining allegations in paragraph 26.

27.     Defendant lacks sufficient knowledge or information to form a belief regarding the veracity of the allegations in the first sentence of paragraph 27 and therefore denies them.  Defendant admits that he disclosed (to Grohman) knowledge of Grohman's buyout of a former employee.  Defendant denies the remaining allegations of paragraph 27.

28.     Defendant admits that he provided Grohman Company password credentials on June 21, 2017 in response to Mr. Grohman's request for passwords. Defendant denies that the password credentials were incomplete and denies the remining allegations in paragraph 28.

29.     Defendant denies the allegations in paragraph 29.

30.     Defendant lacks sufficient knowledge or information to form a belief regarding the veracity of the allegations in the first sentence of paragraph 30 relating to Grohman's actions and therefore denies them.  Defendant denies he ever held any Company information hostage.  Defendant denies the remaining allegations in paragraph 30.

31.     Defendant admits the allegations in paragraph 31.

32.     Defendant denies that he created any "code 'time bomb'" and lacks sufficient knowledge or information to form a belief regarding the veracity of the remaining allegations in paragraph 32, and therefore denies them.

33.     Defendant admits that he had ongoing discussions with Grohman that continued on July 25, 2017.  Defendant denies the characterization of those conversations and denies the remaining allegations in paragraph 33.

34.     Defendant lacks sufficient knowledge or information to form a belief regarding the veracity of the allegations in the first sentence of paragraph 34 and therefore denies them.  Defendant denies the remaining allegations in paragraph 34.

35.     Defendant lacks sufficient knowledge or information to form a belief regarding the veracity of the allegations regarding the efforts of the technical consultant, but Defendant denies that he created any "malicious code."  Defendant admits that copies of code related to TSA's client side scrapers was stored on a Strickcmb repository.  Defendant denies the remaining allegations in paragraph 35.

36.     Defendant lacks sufficient knowledge or information to form a belief regarding the veracity of the allegations regarding the technical consultant's discoveries but denies the substance of the discoveries and the allegations as they relate to the Defendant and any remaining allegations in paragraph 36.

37.     Defendant denies the allegations in paragraph 37.

38.     Defendant denies the allegations in paragraph 38.

39.     Defendant denies the allegations in paragraph 39.

## FIRST CAUSE OF ACTION

### (Misappropriation of Trade Secrets – 18 U.S.C. §1836)

40.     Defendant incorporates and re-asserts his responses to paragraphs 1 through 39 as though fully set forth herein as his response to paragraph 40.

41.     The allegations in paragraph 41 state legal conclusions to which answers are neither required, nor provided.  To the extent answers are deemed required, the allegations in paragraph 41 are denied.

42.     Defendant denies the allegations in paragraph 42.

43.     Defendant denies the allegations in paragraph 43.

44.     Defendant denies the allegations in paragraph 44.

45.     Defendant denies the allegations in paragraph 45.

46.     Defendant denies the allegations in paragraph 46.

## SECOND CAUSE OF ACTION

### (Misappropriation of Trade Secrets – Civil Code Section 3426.1, *et seq.*)

47.     Defendant incorporates and re-asserts his responses to paragraphs 1 through 46 as though fully set forth herein as his response to paragraph 47.

48.   Defendant denies the allegations in paragraph 48.

49.   Defendant denies the allegations in paragraph 49.

50.   Defendant denies the allegations in paragraph 50.

51.   The allegations in paragraph 51 state legal conclusions to which answers are neither required, nor provided.  To the extent answers are deemed required, the allegations in paragraph 51 are denied.

52.   Defendant admits that through his employment with Plaintiff he was given access to Plaintiff's database and software, but denies the remaining allegations in paragraph 52.

53.   Defendant denies the allegations in paragraph 53.

54.   Defendant denies the allegations in paragraph 54.

55.   Defendant denies the allegations in paragraph 55.

56.   Defendant denies the allegations in paragraph 56.

57.   Defendant denies the allegations in paragraph 57.

58.   Defendant denies the allegations in paragraph 58.

## THIRD CAUSE OF ACTION

### (Violation of 18 U.S.C. §§ 1030 *et seq.* – Computer Fraud)

59.   Defendant incorporates and re-asserts his responses to paragraphs 1 through 58 as though fully set forth herein as his response to paragraph 59.

60.   Defendant admits that Plaintiff's computers and servers are used to host the Company's website and business operations.  The remaining allegations in paragraph 60 state legal conclusions to which answers are neither required, nor provided.  To the extent answers are deemed required, the allegations are denied.

61.   Defendant denies the allegations in paragraph 61.

62.   Defendant denies the allegations in paragraph 62.

63.   Defendant denies the allegations in paragraph 63.

64.   Defendant denies the allegations in paragraph 64.

65.   Defendant denies the allegations in paragraph 65.

66.    Defendant denies the allegations in paragraph 66.

67.    Defendant denies the allegations in paragraph 67.

68.    Defendant denies the allegations in paragraph 68.

## FOURTH CAUSE OF ACTION

### (Violation of Penal Code § 502 –

### California Comprehensive Data Access and Fraud Act)

69.    Defendant incorporates and re-asserts his responses to paragraphs 1 through 68 as though fully set forth herein as his response to paragraph 69.

70.    Defendant denies the allegations in paragraph 70.

71.    The allegations in paragraph 71 state legal conclusions to which answers are neither required, nor provided.  To the extent answers are deemed required, the allegations in paragraph 71 are denied.

72.    Defendant denies the allegations in paragraph 72.

## FIFTH CAUSE OF ACTION

### (Breach of Contract)

73.    Defendant incorporates and re-asserts his responses to paragraphs 1 through 72 as though fully set forth herein as his response to paragraph 73.

74.    Defendant denies the allegations in paragraph 74.

75.    Defendant denies the allegations in paragraph 75.

76.    Defendant denies the allegations in paragraph 76.

## SIXTH CAUSE OF ACTION

### (Breach of Fiduciary Duty / Duty of Loyalty)

77.    Defendant incorporates and re-asserts his responses to paragraphs 1 through 76 as though fully set forth herein as his response to paragraph 77.

78.    Defendant denies the allegations in paragraph 78.

79.    Defendant denies the allegations in paragraph 79.

80.    Defendant denies the allegations in paragraph 80.

BROWN WHITE & OSBORN™
A T T O R N E Y S

## SEVENTH CAUSE OF ACTION

### (Conversion)

81.     Defendant incorporates and re-asserts his responses to paragraphs 1 through 80 as though fully set forth herein as his response to paragraph 81.

82.     Defendant denies the allegations in paragraph 82.

83.     Defendant denies the allegations in paragraph 83.

84.     Defendant denies the allegations in paragraph 84.

## EIGHTH CAUSE OF ACTION

### (Violation of California Business & Professions Code § 17200)

85.     Defendant incorporates and re-asserts his responses to paragraphs 1 through 84 as though fully set forth herein as his response to paragraph 85.

86.     Defendant denies the allegations in paragraph 86.

87.     Defendant denies the allegations in paragraph 87.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part to the extent Plaintiff has failed to mitigate, minimize, or avoid damages allegedly sustained

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrines of waiver, laches, estoppel, unclean hands, and other doctrines of equitable relief.

## FOURTH AFFIRMATIVE DEFENSE

The Complaint does not provide sufficient information to enable Defendant to identify all applicable defenses and therefore he reserves the right to assert such additional defenses as are ascertained through discovery.

## PRAYER FOR RELIEF

Defendant denies that Plaintiff is entitled to any relief whatsoever and respectfully requests that Plaintiff's complaint against Defendant be dismissed in its

10

1  entirety with prejudice and for any other relief this Court deems fair, just, and

2  appropriate.

3  <u>**COUNTERCLAIMS AND THIRD-PARTY COMPLAINT**</u>

4      For his counterclaims against plaintiff Webullient, Inc. ("Webullient") and

5  third-party complaint against Chad Grohman, FIIK Holdings, LLC ("FIIK"),

6  Transparent Media Ventures, LLC ("TMV") and The Search Agents, Inc. ("TSA"),

7  counterclaimant and third-party plaintiff Gregory Strickler allege as follows:

8      **STATEMENT OF ACTION**

9      1.    Gregory Strickler brings this action against Grohman and four of the

10  companies he controls for Grohman's freeze out of Strickler, his refusal to provide the

11  corporate books and records of Webullient, FIIK, TMV, the Consolidated Companies,

12  and TSA; his multiple breaches of fiduciary duty in order to deprive Strickler of the

13  value of his equity interests in the companies, by denying him distributions from TSA,

14  and by refusing to buy out his Class B shares in FIIK, among other things.  Strickler

15  seeks injunctive relief, monetary damages, and related relief against Grohman,

16  Webullient, FIIK, TMV, and TSA.

17      2.    Since Strickler joined FIIK and the Consolidated Companies in 2015,

18  Grohman has methodically marginalized and ousted each and every investor, key

19  employee, and equity holder in each and every entity he controls through whatever

20  means necessary.  Through firings, freeze outs, and buy outs, over the last eighteen

21  (18) months Grohman has successfully removed all other equity owners in the

22  Consolidated Companies and TSA.  Grohman's attempted wrongful ouster of Strickler

23  is the final step in Grohman's strategy to consolidate his equity in and control over the

24  Consolidated Companies and TSA.

25      **JURISDICTION AND VENUE**

26      3.    This Court has supplemental jurisdiction over this compulsory

27  counterclaim against Webullient pursuant to 28 U.S.C. 28 U.S.C. § 1367(a) because it

28

1   "arises out of the transaction or occurrence that is the subject matter" of the plaintiffs

2   claim.

3       4.      This Court has supplemental jurisdiction over the claims against third-

4   party defendants Grohman, FIIK, and TSA pursuant to 28 U.S.C. § 1367 because the

5   claims arise out of the same facts and circumstances as the claims asserted in the

6   original complaint and are so related to the claims asserted in the complaint that they

7   form part of the same case and controversy under Article III of the United States

8   Constitution.

9       5.      Venue is proper in this federal district under 28 U.S.C. §1391(b).

10                          **PARTIES**

11      6.      Counterclaimant Gregory Strickler is a member of Third Party Defendant

12  FIIK Holdings, LLC ("FIIK").  Strickler owns a 25.1% equity interest in FIIK, TMV,

13  Webullient, and the Consolidated Companies.  He is also a member of Third Party

14  Defendant The Search Agents, LLC ("TSA") with a 25.1% equity interest.  At all

15  relevant times, Gregory Strickler worked for the Consolidated Companies and TSA,

16  owned in part and controlled by Chad Grohman.

17      7.      Third Party Defendant Chad Grohman is the majority owner and

18  controlling member and/or shareholder of Webullient, FIIK, TMV, the Consolidated

19  Companies, and TSA.   Grohman is an individual maintaining his principal residence

20  in the State of California, County of Los Angeles.

21      8.      Counter-defendant Webullient, Inc. is a California corporation with its

22  principal place of business in Los Angeles County, California.

23      9.      Third Party Defendant FIIK is a Delaware Limited Liability Company

24  with its principal place of business in Los Angeles County, California.  FIIK is 100%

25  owner of Third Party Defendant, Transparent Media Ventures, LLC, also a Delaware

26  Limited Liability Company with its principal place of business in Los Angeles

27  County, California.  Transparent Media Ventures is the 100% owner of Webullient

28  and, upon information and belief, Cereal Media.  Upon information and belief, Cereal

12

BROWN WHITE & OSBORN
A T T O R N E Y S

Media is 100% owner of Amplify Media, Uptick Ads, Domainiacs, Codify, Greenmail Solutions, Prompt Path, and xPlus1Media.  Collectively, the entities listed in this paragraph 5 shall be referred to as "the Consolidated Companies."

10.     Third Party Defendant TSA is a California Limited Liability Company with its principal place of business in Los Angeles County, California.

## FACTS

11.     Strickler began working for the Consolidated Companies from 2011 to 2013 as Senior Engineer.  In February 2015, Grohman hired Mr. Strickler as Chief Technology Officer of the Consolidated Companies.

12.     Upon re-joining the Consolidated Companies, Strickler received a 4% equity interest in the Consolidated Companies that vested immediately.  Thus, Mr. Strickler also received a 4% equity interest in FIIK.

13.     When Strickler became an owner, the equity interests in the Consolidated Companies were owned, upon information and belief, by the following parties in the following amounts: Grohman – 55%; JBR Media Ventures – 33%; Andrew Jones – 8%; and Strickler – 4%.

### Creation of TSA and Contract with Webullient

14.     On or around June 2015, Grohman, Strickler and Andrew Jones created The Search Agents, LLC ("TSA").  TSA was created to provide job data scraping, job data aggregation, and various targeted email services to Webullient, FIIK, and other companies.

15.     Initially, Grohman owned an 82% equity interest in TSA, Jones owned 12%, and Strickler owned 6%.

16.     TSA entered into one or more services contracts with Webullient.  Under the contracts, TSA provided job data scraping, job data aggregation, email expertise, email setup, and targeted email delivery in exchange for monthly payments from Webullient.

BROWN WHITE & OSBORN LLP
A T T O R N E Y S

17.     Strickler created and managed all the software on behalf of TSA. Specifically, Strickler created "web scraping" software and technology, allowing TSA to automatically search employer websites and capture open job listings.  TSA licensed this software to Webullient.  Webullient and the Consolidated Companies then used the software to obtain the job listings data and provided that data to other third-party job search websites or job boards.  If a user clicked on the job listing that the Consolidated Companies had posted to the third-party's site, the user would be directed to a website owned and controlled by the Consolidated Companies, who would then capture registration information from the user.  TSA next utilized third-party software to send targeted emails to the Consolidated Companies' database of email users, generating revenue through advertisements and paid job clicks.

18.     Webullient paid TSA approximately $150 for each active company scraper per month.  Webullient also paid TSA approximately 40-50% of all advertising revenue received from targeted email delivered by TSA on behalf of Webullient.

19.     TSA's contract with Webullient proved to be profitable for both entities, generating between $50,000 and $130,000 per month in revenue to Webullient and corresponding payments to TSA under the contract.

20.     Throughout Strickler's employment with TSA, Strickler regularly received distribution checks from TSA.  For example, from January to June of 2017, TSA generated approximately $300,000 from its contracts with Webullient.  Strickler received $71,154.93 in distributions over that time period.

**Grohman's Ouster of Other Owners**

21.     On or about May 2016, Grohman terminated Andrew Jones's employment and commenced negotiations with Jones to buy out his equity interests in the Consolidated Companies.

22.     On or about October 2016, Grohman also arranged to buy out JBR Media Venture's 33% equity interests in the Consolidated Companies, leaving Jones,

Strickler, and Grohman the only remaining equity owners of the Consolidated Companies and TSA.

23.     On November 23, 2016, after failed negotiations to purchase Jones's interests in the Consolidated Companies and TSA, Grohman (through FIIK and TSA) sued Jones, alleging breach of contract, breach of fiduciary duty, and unfair competition.  Jones removed the case to the Central District of California, Case No. 17-cv-00095. The parties settled the litigation, and Jones severed ties with the companies in the spring of 2017.  After Jones's departure, Strickler and Grohman became the only remaining equity owners in the Consolidated Companies and TSA.

24.     By May 2017 Strickler had amassed 25.1% equity in the Consolidated Companies and a 25.1% ownership interest in TSA.  (Ex. A, May 7, 2017 Equity Agreements).  Given the litigation between Jones and Grohman, the fact that Grohman had never provided stock certificates or other indicia of ownership, and the impending expansion of his growing family, Strickler asked Grohman to memorialize Strickler's ownership interests.  Grohman obliged by signing the May 7, 2017 Equity Agreements.

25.     In May 2017, Strickler took a planned leave of absence after the birth of his second child.  The baby was born on May 16, 2017, and Strickler returned to work on June 5, 2017.

26.     On Sunday June 11, 2017 at 8:57 p.m., Strickler sent Grohman an email entitled "Request for equal partnership," in which Strickler advocated exactly that. (Ex. B, June 11, 2017 email from Strickler to Grohman).

27.     Just one business day later, on June 13, 2017, Grohman halted distributions from TSA to Strickler.

28.     Needless to say, Grohman responded negatively to Strickler's request for equal partnership.  On June 30, 2017, Grohman fired Strickler and froze him out of the Consolidated Companies.  Over the course of the summer, Grohman deprived

ANSWER TO COMPLAINT, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT

1   Strickler of distributions from TSA, and stonewalled him on requests for financials

2   and other corporate documents.

3               **Grohman's Sham Negotiations and Refusal to Buy Out Strickler**

4               29.     Under the FIIK Agreement, FIIK was obliged to purchase Strickler's

5   interests within 90 days of his termination on June 30, 2017. To date, FIIK has not

6   paid Strickler a single nickel for his interest.

7               30.     Despite Strickler's prominent role in the Consolidated Companies and

8   TSA and his 25.1% equity interests in both, Grohman had never provided Strickler

9   access to the entities' financials or other details regarding the entities' financial

10  transactions or status.

11              31.     Therefore, on July 5, 2017, in order to obtain a reasonable valuation of

12  his ownership interests, Strickler formally requested financial statements, auditor

13  reports, tax returns, balance sheets, income statements and other books and records

14  related to the Consolidated Companies and TSA.  (Ex. C, July 5, 2017 email from

15  Strickler to Grohman).

16              32.     On July 6, 2017, Grohman provided the FIIK and TSA Operating

17  Agreements, the 2015 tax returns for those entities and skeletal financial statements

18  for FIIK and TSA.  When Strickler followed up with Grohman on July 7, Strickler

19  asked why Grohman did not include documents related to the Consolidated

20  Companies, including Transparent Media Ventures, Webullient, Amplify Media,

21  Uptick Ads, and others.  Grohman said he "simply was not comfortable handing them

22  over to someone who I do not trust" and flatly rejected Strickler's request.

23              33.     Despite being stonewalled, Strickler made a good faith offer to sell his

24  interests to Grohman.  On July 8, 2017 Grohman responded that he was offended by

25  Strickler's sale price, but that Grohman would agree to sell his shares to Strickler at

26  the valuation.  When Strickler said he was interested in buying out Grohman,

27  Grohman purportedly agreed to explore it, but it was all a ruse.  Once again, when

28  Strickler requested additional financial information – information to which he is

entitled as a member and shareholder – in order to perform due diligence on the potential purchase, Grohman refused to provide the documents yet again, effectively killing the deal.

34.     Upon information and belief, Grohman's July 8 offer to sell was a sham, and he never intended to sell Strickler his interests.

35.     Instead, consistent with his *modus operandi* in ousting Jones, Grohman purported to engage in good faith negotiations for over two months, only to propose a wholly one-sided "Cancellation of Membership Interests and Release Agreement" on the 83rd day that falsely claimed Strickler's equity only consisted of "Class B Units," thereby unconscionably reducing the purchase price Grohman proposed to pay. Moreover, Grohman's 11th hour proposal imposed numerous onerous conditions, such as a full release and indemnification, among others, to which FIIK would not be entitled in a buyback of Class B Units in any event.

36.     Not surprisingly, Strickler rejected Grohman's offer.

37.     In response, less than two weeks later, on October 4, 2017, in order to receive a discount on the money rightfully owed Strickler, or as false justification for his refusal to pay, Grohman (through Webullient) filed this lawsuit and its frivolous claims against Strickler for breach of contract, breach of fiduciary duty, computer fraud, and misappropriation of trade secrets.

38.     Strickler has met all his obligations to Webullient, FIIK, TMV and the Consolidated Companies and TSA at all relevant times.

## COUNT I

### Breach of Contract

### (Against FIIK)

39.     Strickler hereby re-alleges the allegations of paragraphs 1 through 38 as though fully set forth herein.

40.     FIIK is governed by the Limited Liability Company Operating Agreement of FIIK Holdings, LLC dated November 17, 2008 (the "FIIK Agreement," attached as Ex. D).

41.     Section 2.091 of the FIIK Agreement provides: "The authorized Units of the Company shall consist of One Million (1,000,000) Units, which are comprised of the following: (a) Eight Hundred and Fifty One Thousand Three Hundred (851,300) Class A Units and (b) One Hundred and Forty Eight Thousand Seven Hundred (148,700) Class B Units which combined shall represent 100% of the issued and outstanding membership units of the Company."

42.     Strickler owns 25.1% of the Class B Units of FIIK and 25.1% of the Class A Units of FIIK.

43.     Section 8.04.1 provides, in part: "upon termination of employment, consultant or otherwise of any Class B Member, the Company shall within (90) days of such termination redeem all, but not less than all, Class B Membership Units from such person(s) or entity at a book value price to be determined in the sole discretion of the Board of Directors."

44.     The FIIK Holdings, LLC Operating Agreement ("FIIK Agreement") is an enforceable contract between and among FIIK and its members. A true and correct copy of the FIIK Agreement is attached hereto as Exhibit C.

45.     Under the FIIK Agreement, FIIK was obliged to purchase Strickler's membership interest within 90 days of FIIK's termination of Strickler's employment.

46.     FIIK has not purchased Strickler's membership interest.

47.     FIIK's refusal and failure to purchase Strickler's membership interest breached and continues to breach the FIIK Agreement.

48.     Grohman and FIIK knew and understood FIIK's obligations to purchase Strickler's Class B Units, but nonetheless refused to do so. FIIK acted in bad faith in its refusal and failure to purchase Strickler's membership interest.

49.     FIIK's breach of the FIIK Agreement and refusal and failure to purchase Strickler's membership interest caused and continues to cause Strickler ongoing damages commensurate with the amounts he is due under the Agreement, plus interest and attorney's fees and costs totaling an amount to be determined at trial.

WHEREFORE, Third Party Plaintiff Strickler prays for judgment against third Party Defendant FIIK as follows:

A. For an order requiring FIIK to purchase Strickler's membership interests under Section 8.04 (or any other applicable section) of the FIIK Holdings, LLC Operating Agreement;

B. For payment of interest due and owing under Section 8.02 (or any other applicable section) of the FIIK Holdings, LLC, Operating Agreement;

C. For attorney fees, costs of suit and prejudgment and post-judgment interest, as provided under applicable law; and

D. For such other, further, and/or different relief, in law or equity, as the Court may deem just and proper.

## COUNT II

### Breach of Fiduciary Duty

### (Against Grohman)

50.     Strickler hereby re-alleges the allegations of paragraphs 1 through 49 as though fully set forth herein.

51.     Chad Grohman was a member and manager of FIIK.

52.     As a member and manager of FIIK, Grohman owed Strickler, another member, fiduciary duties of loyalty, care, and good faith and fair dealing.

53.     In June 2017, Grohman terminated Strickler's employment for no reason and wrongfully ousted Strickler from FIIK.

54.     Grohman knew and understood that FIIK was obliged to purchase Strickler's membership interest within 90 days of FIIK's termination of Strickler's employment.

55.    In fact, Grohman began negotiating on behalf of FIIK to purchase Strickler's membership interests.

56.    However, those negotiations turned out to be wholly disingenuous, and, upon information and belief, Grohman never intended to cause FIIK to purchase Strickler's membership interest.

57.    Grohman, who controlled FIIK at all relevant times, refused to cause FIIK to purchase Strickler's membership interest so Grohman could keep the money for himself.

58.    Grohman's refusal to abide by the FIIK Operating Agreement and refusal to cause FIIK to purchase Strickler's membership interest in accord with the Agreement breached his fiduciary duties to Strickler.

59.    Additionally, Grohman used the company funds of Webullient, a wholly owned subsidiary of FIIK, and/or FIIK or the Consolidated Companies to pay for sundry personal expenses, including but not limited to personal expenditures totaling at least $16,000 from December 2015 until December 2016.

60.    Grohman was also a member and manager of TSA.

61.    As a member and manager of FIIK and TSA, Grohman owed Strickler, another member, fiduciary duties of loyalty, care, and good faith and fair dealing.

62.    In an attempt to prevent distributions to Strickler, Grohman prevented TSA from enforcing its contract with Webullient, despite Webullient's continued use of TSA's software.

63.    From June 13, 2017 to the present, Grohman prevented Webullient from paying TSA its monthly dues under the service contracts.  As a 25.1% equity interest holder in TSA, Strickler was due distributions from TSA.

64.    Since June 13, 2017, Strickler has not received any distribution checks from TSA.

65.    Grohman's breaches of his fiduciary duties caused and continues to cause Strickler ongoing damages commensurate with the amounts he is due under the

Agreement, plus interest and attorney's fees and costs and other damages totaling an amount to be determined at trial.

WHEREFORE, Counterclaimant Strickler prays for judgment against Third-Party Defendant Chad Grohman as follows:

A.  For an order requiring Grohman to cause FIIK to purchase Strickler's membership interests under Section 8.04 (or any other applicable section) of the FIIK Holdings, LLC Operating Agreement;

B.  For Payment in an amount commensurate with the value of Strickler's membership interest in FIIK;

C.  For payment of interest due and owing under Section 8.02 (or any other applicable section) of the FIIK Holdings, LLC, Operating Agreement;

D.  For an order requiring Grohman to pay back Webullient for all personal expenses he paid using Webullient funds, including but not limited to approximately $16,000 paid using a Webullient credit card.

E.  For Payment in an amount commensurate with Strickler's lost distribution earnings from TSA;

F.  For attorney fees, costs of suit and prejudgment and post-judgment interest, as provided under applicable law; and

G.  For such other, further, and/or different relief, in law or equity, as the Court may deem just and proper.

## COUNT III

### Violation of California Corporations Code sections 1601 and 1602

### (Against Webullient)

66.   Strickler hereby re-alleges the allegations of paragraphs 1 through 65 as though fully set forth herein.

67.   Strickler is 25.1% shareholder of Webullient.

68.     On July 5, 2017 and again on July 7, 2017 Strickler requested an inspection of the corporate books and records of Webullient and the Consolidated Companies.

69.     Since terminating Strickler, Grohman has repeatedly refused to provide Strickler with access to the books and records of Webullient and the Consolidated Companies, in violation of the companies' bylaws and California Corporations Code sections 1601 and 1602.

70.     Specifically, Strickler has requested financial records, including revenue for the purposes of calculating the valuation of his shares.

71.     Despite Strickler's reasonable requests for information, Grohman has refused to provide Strickler with the information and records that he is entitled to inspect and copy in its capacity as an equity interest holder in Webullient.

72.     Strickler is informed and believes that, unless enjoined by order of the Court, Webullient and the Consolidated Companies (acting through Grohman) will continue to withhold material documents and information from Strickler. No adequate remedy exists at law for the injuries alleged herein, and Strickler will suffer great and irreparable injury if the wrongful conduct of Webullient and Grohman is not immediately enjoined and restrained.

WHEREFORE Counterclaimant Strickler prays for judgment against Counter-defendant Webullient as follows:

    A.  For injunctive relief compelling Webullient to immediately produce for inspection all books, records and documents authorized by California Corporations Code Section 1601 and 1602;

    B. For an order directing Webullient to conduct an accounting;

    C. For attorney fees, costs of suit and prejudgment and post-judgment; interest, as provided under applicable law; and

    D. For such other, further, and/or different relief, in law or equity, as the Court may deem just and proper.

## COUNT IV

### Violation of California Corporations Code Section 17704.10

### (Against FIIK, Transparent Media Ventures, and TSA)

73.     Strickler hereby re-alleges the allegations of paragraphs 1 through 72 as though fully set forth herein.

74.     Strickler is 25.1% owner and member of FIIK, TMV, and TSA.

75.     On July 5, 2017 and again on July 7, 2017 Strickler requested an inspection of the corporate books and records of the FIIK, TMV, the Consolidated Companies, and TSA.

76.     Since terminating Strickler, Grohman has repeatedly refused to provide Strickler with access to the books and records of FIIK, TMV, the Consolidated Companies and TSA, in violation of the companies' bylaws and California Corporations Code section 17704.10.

77.     Specifically, Strickler has requested financial records, including revenue for the purposes of calculating the valuation of his equity interests.

78.     Despite Strickler's reasonable requests for information, FIIK, TMV, and TSA (through Grohman) have refused to provide Strickler with the information and records that he is entitled to inspect and copy in its capacity as an equity interest holder in FIIK, TMV, the Consolidated Companies and TSA.

79.     Strickler is informed and believes that, unless enjoined by order of the Court, FIIK, TMV, and TSA (acting through Grohman) will continue to withhold material documents and information from Strickler.  No adequate remedy exists at law for the injuries alleged herein, and Strickler will suffer great and irreparable injury if the wrongful conduct of FIIK, TMV, TSA, and Grohman is not immediately enjoined and restrained.

WHEREFORE Counterclaimant Strickler prays for judgment against Third-Party Defendants FIIK, TMV, and TSA as follows:

A.  For injunctive relief compelling each entity to immediately produce for inspection all books, records and documents authorized by California Corporations Code Section 17704.10 and 17701.13;

B.  For an order directing each entity to conduct an accounting;

C.  For attorney fees, costs of suit and prejudgment and post-judgment; interest, as provided under applicable law; and

D.  For such other, further, and/or different relief, in law or equity, as the Court may deem just and proper.

DATED:  October 27, 2017

Respectfully submitted,

COTSIRILOS, TIGHE, STREICKER POULOS & CAMPBELL, LTD.

By  _____
MATTHEW S. RYAN
Attorneys for Defendant
GREGORY STRICKLER

DATED:  October 27, 2017

Respectfully submitted,
BROWN WHITE & OSBORN LLP

By   s/ Kenneth P. White
KENNETH P. WHITE
Attorneys for Defendant
GREGORY STRICKLER

4839-7010-3634, v. 1

ANSWER TO COMPLAINT, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT